# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
GERAGOS@GERAGOS.COM

MARK J. GERAGOS        SBN 108325
BEN J. MEISELAS        SBN 277412
ZACK V. MULJAT         SBN 304531
ERIC HAHN              SBN 311771

Attorneys for Plaintiffs CRAIG MCLEOD and STEVEN MCCAULEY, individually and as the representatives of a class of similarly-situated persons

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG MCLEOD, individually and as the representative of a class of similarly-situated persons; and STEVEN L. MCCAULEY, individually and as the representative of a class of similarly-situated persons;<br><br>Plaintiffs,<br><br>vs.<br><br>CENTURYLINK, INC., a Louisiana corporation doing business in California as CENTURYLINK COMMUNICATIONS, LLC, CENTURYLINK PUBLIC COMMUNICATIONS, INC., and CENTURYLINK SALES SOLUTIONS, INC.; and DOES 1 through 50, inclusive;<br><br>Defendants. | **Case No.: 2:17-cv-04504**<br><br>**CLASS ACTION COMPLAINT**<br><br>**1. FRAUD**<br>**2. UNFAIR COMPETITION**<br>**3. UNJUST ENRICHMENT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Craig McLeod and Steven L. McCauley, individually and as the representatives of a class of similarly-situated persons, allege as follows:

1.  On June 14, 2017, former CenturyLink employee Heidi Heiser courageously filed a whistleblower complaint in the Superior Court of Arizona alleging that she was terminated for reporting to her supervisors and the CEO unlawful billing practices she observed and refused to take part in as a sales representative. Attached hereto as Exhibit A is a true and correct copy of Ms. Heiser's whistleblower complaint.

2.  Ms. Heiser's allegations of what she observed, and what the CenturyLink corporate culture encouraged, are consistent with the experiences of hundreds of thousands and potentially millions of consumers who have been defrauded by CenturyLink. It is estimated that the damages to consumers could range between $600 million and $12 billion, based on CenturyLink's 5.9 million subscribers.

3.  A digital revolt against CenturyLink's fraud has been fomented by subscribers on social media and consumer watchdog websites.

4.  By way of example, the following consumer complaints are emblematic of CenturyLink's fraudulent practices:



- 2 -

5. As discussed further below, when putative class representative Craig McLeod inquired as to false charges on his bill, CenturyLink told him it was his "fault" for not catching its fraudulent charges, as opposed to CenturyLink taking responsibility for its fraudulent billing practices in the first instance. Putative Plaintiffs' communications with CenturyLink representatives mirror screenshots posted online by other victims demonstrating a pattern and practice of blaming consumers for failing to identify CenturyLink's own fraud.

6. By way of example, an outraged subscriber posted the following communication on social media:



7. Subscribers also post their written communications complaining of CenturyLink creating and billing for duplicate accounts. Upon complaining,

1  CenturyLink blamed the subscriber or implied that the subscriber was somehow under
2  "fraud review." For example, one subscriber posted the following communication
3  regarding CenturyLink's duplicative billing:



23       8.     These screenshots are not outliers. Attached hereto as Exhibit B is small
24  sample of the thousands of pages of consumer complaints, primarily focused on
25  fraudulent billing practices, lodged on Consumer Affairs' website. The amount of
26  complaints is so vast it exceeds the maximum file size for the Court's Electronic
27  Filing System (ECF). Many consumers state that the only reason they rated
28  CenturyLink with "one star" was that "zero stars" is not an option

(https://www.consumeraffairs.com/cell_phones/centurylink.html).  Additionally, Attached hereto as Exhibit C is a true and correct copy of a Reddit thread responding to recent reporting of Ms. Heiser's complaint from consumers and other former employees and technicians describing the conduct alleged herein. (https://www.reddit.com/r/news/comments/6hon4l/centurylink_is_accused_of_running_wells_fargolike/?st=J41YD4QQ&sh=5a66cd7a).

9. Further, searching Twitter and Facebook under searches that include the word "CenturyLink" with any number of additional keywords—"scam," "fraud," "ripoff," and "bill"—provides unprecedented levels of discord, desperation, and demands from victims to remedy CenturyLink's unlawful practices.  Further a search on Google of "CenturyLink Complaints," provides similar results.

10. Upon information and belief, at least one State's Attorney General has investigated and entered into an "assurance of discontinuance" with CenturyLink which prohibits the conduct described herein, however the conduct remains ongoing.

11. The offending and unlawful conduct by CenturyLink, throughout the United States, includes, but is not limited to:

- Billing consumers for phone lines or service items never requested by consumers;
- Billing consumers higher rates than the rates quoted during sales calls;
- Billing consumers early termination fees when they cancelled the services due to higher rates;
- Billing consumers when they cancelled their service upon learning the quality was not how CenturyLink had represented it;
- Billing consumers for periods of service before the service was connected, products never received, and consumers received no credit for these charges;
- Billing consumers for services and products that the consumer never requested without giving the consumer a credit for these charges;

1
2
3
4

- Failing to process consumers' service cancellation requests in a timely manner and billing them for the period of the time the service remained connected following the request for cancellation, without providing a credit for this time period; and

5
6
7
8

- Charging consumers full price for leased modems that consumers returned to CenturyLink within the required timeframe, and then referring the consumers account to collections when the consumer refused to pay for the returned modem.

### Craig McLeod

12. Craig McLeod, 65 years old, is a long-haul truck driver and former shipwright living in Summerdale, Alabama, where he cares for his aging mother.

13. Mr. McLeod is a CenturyLink customer, and he relies on CenturyLink to provide internet service to his home.

14. Until earlier this year, Mr. McLeod paid CenturyLink approximately $33 per month for his internet package, exclusive of taxes.

15. On or about April 11, 2017, Mr. McLeod contacted CenturyLink, via its internal customer service online chat platform, to determine the speed at which his internet service was operating.

16. CenturyLink's sales consultant told Mr. McLeod that while his home internet service was currently operating at 10 megabytes per second ("mbps"), he could enjoy 25 mbps for less than $2 more per month than Mr. McLeod was then paying for 10mbps.

17. Further, CenturyLink's sales consultant informed Mr. McLeod that he would only need to restart his modem to take advantage of the faster connection speed.

18. Understanding this to be a good deal, Mr. McLeod agreed to modify his current contract which expires February 2018.

19. Unfortunately, when Mr. McLeod restarted his modem as he was instructed, he found that his internet service was completely cut off.

20. Mr. McLeod immediately contacted CenturyLink to resolve the problem, and they sent a technician to his home.  The technician informed Mr. McLeod that he would need a new router/modem to accommodate the higher internet speed—CenturyLink's representative previously said he would only need to restart his old modem—and the technician then attempted to charge him approximately $80.00 for the new modem.

21. Approximately one week later, on or about April 25, 2017, Mr. McLeod's internet service abruptly stopped working again.  Mr. McLeod contacted CenturyLink yet again to report the latest problem and another technician arrived at his home.  The technician spent approximately 10 minutes on the phone with CenturyLink discussing the problem, and ultimately gave Mr. McLeod yet another new router/modem.

22. Later that month, Mr. McLeod received a prorated bill reflecting his recently updated contract, charging him for part of the month under the terms of his previous contract and for the rest of the month under the terms of the new contract.

23. But when Mr. McLeod received his second bill, about one month later, it was approximately double what he had been previously paying—around $80.00. Upon inspection, Mr. McLeod noticed numerous irregularities that did not reflect the terms of his new contract or services rendered to him by CenturyLink.  First, he was being charged far more than the additional $2 per month he was quoted for his faster internet package.  Second, there was an approximately $35 "wiring" charge added to his bill, presumably reflecting a fee for one of CenturyLink's technicians plugging in a new modem—something he told would not be required in the first place.

24. All told, Mr. McLeod spent approximately 350 minutes communicating with CenturyLink to resolve the numerous issues with his service, and is still in the process of disputing phony charges.

### Steven L. McCauley

25. Steven L. McCauley is 44-year-old resident of Baxter Springs, Kansas. Mr. McCauley is a hardworking man with over 25 years of experience as a hazardous waste specialist.

26. In the small town of Baxter Springs, CenturyLink is among the only internet provider upon information and belief. CenturyLink internet services cost upwards of $80.00 per month without a contract, but around $48.00 per month with a contract. In January 2015, Mr. McCauley entered into a contract with CenturyLink for internet services at $48.00 per month.

27. Mr. McCauley's CenturyLink contract for internet services was set to expire in January 2016. After having heard that his friend in Iowa paid CenturyLink $24.99 per month for the exact same internet service, Mr. McCauley contacted a CenturyLink representative and inquired as to the availability of the $24.99 plan.

28. While the CenturyLink representative informed Mr. McCauley that a $24.99 plan was unavailable in his area, a $27.99 plan was being offered. Mr. McCauley signed up for the $27.99 package for 10 mbps unlimited internet service.

29. Upon receipt of his bill in February 2016, Mr. McCauley was shocked to discover that he was being charged $80.00, the non-contract monthly price.

30. Mr. McCauley called CenturyLink to dispute this charge and spoke with another representative, who informed him that a "$27.99 plan" did not exist—and in fact never existed. The representative said the best she could do was a $43.00 per month contract.

31. Fed up, Mr. McCauley then informed the CenturyLink representative that he would be switching service providers. The representative then told Mr. McCauley that he would be forced to pay a $200.00 contract termination fee.

32. Mr. McCauley remains trapped in an exorbitant contract he never agreed to enter.

# PARTIES

33. Plaintiff Craig McLeod is a citizen of the State of Alabama who lives in Summerdale, Alabama. He is a qualified and appropriate representative of a group of customers of Defendant CenturyLink, Inc. who are similarly situated and have suffered harm in the same manner as Mr. McLeod as a result of the actions and/or omissions of the Defendants.

34. Plaintiff Steven L. McCauley is a citizen of the State of Kansas who lives in Baxter Springs, Kansas. He is a qualified and appropriate representative of a group of customers of Defendant CenturyLink, Inc. who are similarly situated and have suffered harm in the same manner as Mr. McCauley as a result of the actions and/or omissions of the Defendants.

35. CenturyLink, Inc. is a Louisiana corporation doing business in California as CenturyLink Communications, LLC, CenturyLink Public Communications, Inc., and CenturyLink Sales Solutions, Inc., which are registered to do business in the State of California. At all material times CenturyLink, Inc. has maintained legal authority to transact business in this State, has maintained operations throughout the State of California, including in Los Angeles County, and has transacted business throughout California, including in Los Angeles County. On information and belief, CenturyLink is a large corporate provider of phone and data transmission services, including telephone, high speed internet and television services to residential and commercial consumers throughout the United States.

36. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 50, inclusive, are currently unknown to Plaintiffs, who therefore sue Defendants by such fictitious names. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants designated herein as DOES is legally responsible in some manner for the events and happenings referred to herein and caused injury and damage proximately thereby to Plaintiffs as hereinafter alleged. Plaintiffs will seek leave of court to amend

this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES when the same have been fully ascertained.

37. Plaintiffs are informed and believe, and based thereon allege, that at all times mentioned herein, each of the Defendants was the agent, servant, employee, co-venturer, and co-conspirator of each of the remaining Defendants, and was at all times herein mentioned acting within the course, scope, purpose, consent, knowledge, ratification, and authorization of and for such agency, employment, joint venture and conspiracy.

38. Plaintiffs are further informed and believe, and based thereon allege, that at all relevant times, each Defendant was completely dominated and controlled by its Co-Defendants, and each was the alter ego of the other. Whenever and wherever reference is made in this Complaint to any conduct by Defendant or Defendants, such allegations and references shall also be deemed to mean the conduct of each of the Defendants, acting individually, jointly, and severally. Whenever and wherever reference is made to individuals who are not named as Defendants in this Complaint, but were employees and/or agents of Defendants, such individuals at all relevant times acted on behalf of Defendants named in this Complaint within the scope of their respective employments.

**JURISDICTION AND VENUE**

39. This Court has original jurisdiction over this action under the *Class Action Fairness Act*, 28, U.S.C. § 1332(d), because this is a class action in which: (1) there are more than a one hundred and fifty (150) members in the proposed class; (2) various members of the proposed class are citizens of states different from where Defendants are citizens; and (3) the amount in controversy, exclusive of interest and costs, exceeds $5,000,000.00 in the aggregate, and is preliminarily estimated to be between $600 million and $12 billion, based on CenturyLink's approximately 5 million broadband subscribers.

40. In addition, this Court has supplemental jurisdiction over Plaintiff's state claims under 28, U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

41. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff and Class Members' claims occurred in the Central District of California as Defendants: (a) is authorized to conduct business in this District and has intentionally availed itself to the laws within this District; (b) currently does substantial business in this District; (c) is subject to personal jurisdiction in this District, and (d) based on the fact that the class consists of approximately 5.9 million subscribers across the United States and, as the most populous State, is a convenient and equally accessible forum for purposes of discovery, coordination among the parties, and for travel for the millions of defrauded consumers who live across the United States. CenturyLink conducts substantial business in the State of California, with offices in El Segundo, Los Angeles County, California and elsewhere. California has an overriding interest in protecting consumers and in prohibiting corporations from carrying out fraud in its State and through interstate commerce.

## CLASS ACTION ALLEGATIONS

42. This action is brought, and may properly be maintained, as a class action under Fed. R. Civ. P. Rule 23 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable. This action satisfies the predominance, typicality, numerosity, superiority, and adequacy requirements of these provisions.

(a) **Numerosity**: The plaintiff class is so numerous that the individual joinder of all members is impractical under the circumstances of this case. While the exact number of Class Members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe, and based thereon allege, that hundreds of thousands of consumers have been victimized by CenturyLink's fraudulent practices.

(b) **Commonality**: Common questions of law and fact exist as to all members of the plaintiff class and predominate over any questions that affect only individual members of the class. The common questions of law and fact include, but are not limited to:

> (i) Whether Defendants made false representations about their telecommunications services;
>
> (ii) If so, whether Defendants knew they were false or were reckless as to their veracity at the time they were made;
>
> (iii) Whether Defendants negligently misrepresented various facts regarding its billing services; and
>
> (iv) Whether Defendants breached any implied or explicit contractual obligations to subscribers or fraudulently engaged services and/or billed services not being offered, not contemplated, or not agreed upon.

(c) **Typicality**: Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and the members of the class sustained damages arising out of CenturyLink's wrongful and fraudulent conduct as alleged herein.

(d) **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs have no interest that is adverse to the interests of the other Class Members.

(e) **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of the class is impractical, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individucal members of the class to redress the wrongs done to them, while important public interests will be served by addressing the matter

as a class action. The cost to and burden on the court system of adjudication of individualized litigation would be substantial, and substantially more than the costs and burdens of a class action. Class litigation would also prevent the potential for inconsistent or contradictory judgments.

(f) **Public Policy Considerations**: When a company or individual engages in fraudulent and predatory conduct with large swaths of consumers, it is often difficult or impossible for the vast majority of those consumers to bring individual actions against the offending party.  Many consumers are either unaware that redress is available, or unable to obtain counsel to obtain that redress for financial or other reasons. Class actions provide the class members who are not named in the complaint with a vehicle to achieve vindication of their rights. The members of the class are so numerous that the joinder of all members would be impractical and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the court. There is a well-defined community of interest in the questions of law or fact affecting the Plaintiff Class in that the legal questions of fraud, breach of contract, and other causes of action, are common to the Class Members.  The factual questions relating to CenturyLink's wrongful conduct and their ill-gotten gains are also common to the Class Members.

## FIRST CAUSE OF ACTION
## FRAUD
### *(By Plaintiff Individually and On Behalf of All Class Members Against All Defendants)*

43.	Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

44. As alleged hereinabove, CenturyLink, through its employees and agents, has engaged in a pattern and practice of fraudulent activity, including but not limited to affirmative misstatements of fact and fraud by omission of other material facts.

45. Specifically, on information and belief, CenturyLink agents took orders or service requests and represented to the customers making such requests that they were fulfilling the requests and assigning just those services the customers had requested.

46. On information and belief, such agents knew at the time they made such representations, or at times thereafter, that they were actually engaging in unlawful conduct as described above.

47. Defendants were aware of the falsity of the representations alleged herein or the falsity of the perceptions created by the omissions alleged herein.

48. Plaintiffs and class members were not aware of the falsity of the representations or of the falsity of the perceptions created by the omissions alleged herein.

49. Defendants intended that Plaintiffs and class members rely upon the false representations and/or omissions alleged herein.

50. The misrepresentations and/or omissions were material to Plaintiffs and class members in making decisions about opening accounts and purchasing services from Defendants, including decisions whether to continue doing business with CenturyLink.

51. Plaintiffs did actually rely upon the false representations and/or omissions and such reliance was justifiable and reasonable under the circumstances.

52. Plaintiffs were harmed as a result of their reliance and have suffered economic losses. Plaintiffs are entitled to recover damages against Defendant for such losses.

53. In engaging in the conduct as hereinabove alleged, Defendants acted with malice, fraud, and oppression and/or in conscious disregard of Plaintiffs' and class

members' rights, thereby warranting an assessment of punitive damages in an amount sufficient to punish Defendants and deter others from engaging in similar conduct

## SECOND CAUSE OF ACTION

## UNFAIR COMPETITION

*(By Plaintiffs Individually and On Behalf of All Class Members Against All Defendants)*

54. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

55. California's Unfair Competition Law (Business & Professions Code §§ 17200, *et seq*., hereafter "UCL") prohibits any "unlawful," "unfair," or "fraudulent" business act or practice and any false or misleading advertising.

56. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ." The UCL also provides for injunctive relief and restitution for UCL violations. By virtue of its above-described wrongful actions, Defendants engaged in unlawful, unfair, and fraudulent practices within the meaning, and in violation of, the UCL.

57. "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*., 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

58. Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for a UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc*., 202 Cal. App. 4th 1342, 1383 (2012).

59. CenturyLink engages in substantial sales and marketing of its products and services within the State of California.

60. Defendants violated the "unlawful prong" by violating the California Consumers Legal Remedies Act and the FAL, as well as by breaching express warranties as described herein.

61. Defendants' acts and practices constitute "unfair" business acts and practices in that the harm caused by Defendants' wrongful conduct outweighs any utility of such conduct, and that Defendants' conduct: (i) offends public policy; (ii) is immoral, unscrupulous, unethical, oppressive, deceitful and offensive, and/or (iii) has caused (and will continue to cause) substantial injury to consumers, such as Plaintiffs and class members; and (4) Defendants' uniform conduct has a tendency to deceive Plaintiffs and class members.

62. The UCL also prohibits any "fraudulent business act or practice." Defendants' above-described claims, nondisclosures, and misleading statements were false, misleading, and likely to deceive the consuming public in violation of the UCL.

63. As a direct and proximate result of these acts and omissions, Plaintiffs and class members have suffered injury and actual out-of-pocket losses.

64. In engaging in the conduct as hereinabove alleged, Defendants acted with malice, fraud, and oppression and/or in conscious disregard of Plaintiffs' and class members' rights, thereby warranting an assessment of punitive damages in an amount sufficient to punish Defendants and deter others from engaging in similar conduct.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT

*(By Plaintiffs Individually and On Behalf of All Class Members Against All Defendants)*

65. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

1      66.     As a result of Defendants unlawful and deceptive practices described above, Defendants have been unjustly enriched in retaining revenues derived from Plaintiffs' and class members' payments for Defendants' services. Retention of that revenue under these circumstances is unjust and inequitable because Defendants used illegal, deceptive, and unfair business practices to induce or force customers to open, purchase, and/or maintain services and products.

      67.     Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiffs and class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

///

///

///

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on their own behalf, and on behalf of the Class Members, pray for judgment as follows:

### CLASS CERTIFICATION:

1. For an order certifying the proposed Class;
2. That Plaintiffs be appointed as the representatives of the Class; and
3. That counsel for Plaintiffs be appointed as Class Counsel.

### AS TO ALL CAUSES OF ACTION:

1. For an order finding in favor of Plaintiff s and the Class Members on all counts asserted herein;
2. For an order declaring that Defendants' conduct violates the statutes referenced herein;
3. For all actual, consequential, statutory and incidental losses and damages, according to proof;
4. For punitive damages, where permitted by law;
5. For attorneys' fees, where permitted by law;
6. For prejudgment interest on all amounts awarded;
7. For costs and suit herein incurred; and
8. For such other and further relief as the Court may deem just and proper.

DATED: June 18, 2017          **GERAGOS & GERAGOS, APC**

By: /s/ MARK J. GERAGOS
MARK J. GERAGOS
BEN J. MEISELAS
ZACK V. MULJAT
ERIC HAHN
Attorneys for Plaintiffs Craig McLeod and Steven L. McCauley, individually and as the representatives of a class of similarly-situated persons.

# DEMAND FOR JURY TRIAL

Plaintiffs Craig McLeod and Steven L. McCauley, individually and as the representatives of a class of similarly-situated persons, hereby demand a jury trial.

DATED: June 18, 2017                    **GERAGOS & GERAGOS, APC**

By: /s/ MARK J. GERAGOS
MARK J. GERAGOS
BEN J. MEISELAS
ZACK V. MULJAT
ERIC HAHN
Attorneys for Plaintiffs Craig McLeod and Steven L. McCauley, individually and as the representatives of a class of similarly-situated persons.